IRVING TRUST COMPANY, as Corporate Trustee, and CHARLES C. MOORE, as Individual Trustee, under Trust Mortgage Made by YONA-VARAH REALTY CORPORATION, Dated August 15, 1924, Respondents, *v.* YONA-VARAH REALTY CORPORATION and Others, Defendants, Impleaded with GEORGE A. HARDER, Appellant.

First Department, February 26, 1937.

*Bernard Sobol* of counsel [*Conboy, Hewitt, O'Brien & Boardman,* attorneys], for the appellant.

*William O. Robertson* of counsel [*Stephen S. Bernstein* with him on the brief; *Cardozo & Nathan,* attorneys for Irving Trust Company; *McLaughlin & Stern,* attorneys for Charles C. Moore], for the respondents.

GLENNON, J.   This action was brought to foreclose a first mortgage on a sixteen-story apartment building situated at Seventy-third street and Amsterdam avenue in the city of New York. The mortgage in suit, given to secure an issue of bonds, was made and delivered by the defendant, Yona-Varah Realty Corporation, to the predecessor of the plaintiff Irving Trust Company, the American Exchange National Bank of New York, as corporate trustee, and Charles C. Moore, as individual trustee. It was executed on August 15, 1924, in connection with a building loan agreement between the mortgagor, Yona-Varah Realty Corporation, and the American Bond and Mortgage Company, Inc. Prior to that time, on May 20, 1924, Yona-Varah Realty Corporation and the American Bond and Mortgage Company, Inc., entered into a so-styled brokerage agreement, in which it was provided among other things, that a bond issue in the principal sum of $1,600,000 was to be sold to the public by the American Bond and Mortgage Company, Inc., and the net proceeds thereof used in the erection of an apartment house on the mortgaged premises.

The individual trustee named under the trust mortgage was Charles C. Moore, the executive vice-president of the American Bond and Mortgage Company, Inc.   It might be noted in passing that pursuant to section 4 of article IV of the trust mortgage, the building loan agreement is " in all respects made a part thereof to the same extent and with the same rights and remedies as if herein set forth at length."

The appellant, Harder, together with one Bertram F. Bonner, guaranteed the performance of all the covenants, agreements and conditions of the trust mortgage to be performed by the mortgagor, Yona-Varah Realty Corporation. These covered the erection of the building, the payment of principal and interest of the bonded indebtedness, and all other sums agreed to be paid by the mortgagor, including taxes and insurance and also the amount of any deficiency upon a foreclosure. The instrument of guaranty however contained the following clause: " This guaranty shall in all

things terminate and be deemed duly performed and shall become null and void and all liability thereunder cease when the construction of the building referred to in Article IV of said mortgage or deed of trust is finished and fully paid for by Yona-Varah Realty Corporation or by the undersigned Bertram F. Bonner and George A. Harder, or any or either of them and when the building is free and clear of any and all liens, equal or superior to the lien of the first mortgage or deed of trust for $1,600,000 annexed.''

It is conceded by both parties to this appeal, although not a part of the record, that a deficiency judgment in the sum of $606,015.24 was entered against the appellant, Harder. The question to be determined is whether or not the liability of Harder was discharged prior to the institution of this action under the clause above quoted.

Necessarily, in determining this question we have examined at length the documents which were received in evidence, together with the testimony adduced upon the trial. We have reached the conclusion that the judgment entered against the appellant, Harder, should be reversed.

It is quite apparent that the purpose of the guaranty was to assure the trustees and the American Bond and Mortgage Company " for the benefit and use of the purchasers of said bonds herein agreed to be made," that the money advanced upon the mortgage loan would be used in the construction and completion of the building then in contemplation, and to take care of taxes and any mechanics' liens which might be filed. That this is so is borne out by the brokerage agreement which reads in part as follows: " The said Owner covenants and agrees in addition to other guarantees herein provided, to procure from Bertram F. Bonner and George A. Harder an agreement of guarantee in writing satisfactory in form and substance to the attorneys for Broker and the Trustee or Trustees in said mortgage, guaranteeing said Trustee or Trustees and the said Broker for the benefit and use of the purchasers of said bonds herein agreed to be made, that said building or buildings shall be completed and the same paid for in full, * * * and also guaranteeing the payment of the interest upon all of said first mortgage bonds and ground rents, if any, the taxes, insurance and other carrying charges up to the time of the final completion of the said building or buildings ready for occupancy, * * *. Said owner expressly agrees that said above mentioned contract of guarantee in this paragraph specified shall be delivered to the said Trustee or Trustees or the said Broker at the time of the delivery of the mortgage aforesaid. Such agreement

of guarantee shall, in addition to the above requirements, have incorporated and included therein, the guarantees and provisions contained in ' Schedule D.' "

Schedule " D, " which was signed by the appellant and his coguarantor, provides, in substance, that the defendants were to guarantee the American Bond and Mortgage Company, Inc., for the faithful performance of each of the covenants of the brokerage agreement, and in addition thereto: " The undersigned also agree to sign the Guarantee of Completion, * * * called for in Paragraph 8, Sheet 6-B, in manner and form and within the time therein specified."

While the plaintiffs in this action were not parties to the brokerage agreement, still, in view of the fact that the language of the guaranty is not free from doubt, it should be considered in order to determine exactly what the parties had in mind. The guaranty of completion was the instrument which was attached to the trust mortgage which was signed by Harder and Bonner.

The building was constructed. The tenement house department on January 13, 1926, issued its certificate which indicated that it conformed to the requirements of the Tenement House Law and that legal occupancy of the building comprising 143 living apartments was approved. A certificate of completion was executed by the mortgagor on January 29, 1926, and delivered to the American Bond and Mortgage Company, Inc., which thereupon made the final payment of the building loan. The latter however, withheld $11,249 by agreement with the owner " as security for the completion of the work and furnishing material and services, in connection with the building now on said mortgaged premises, and for the payment of work, labor, material and services in connection therewith." Payments were to be made out of this fund upon the certificate of the architect in charge of the completion of the building. This was in accord with the spirit and tenor of the " arrangements now existing under the original brokerage agreement and the first mortgage trust deed dated June 9, 1924," as appears by the receipt prepared by the American Bond and Mortgage Company, Inc., and signed by the owner under date of January 27, 1926. In addition thereto, under the terms of the building loan agreement which, as we have seen, was incorporated into the trust indenture the American Bond and Mortgage Company, Inc., was given the right to inspect the building during the course of construction and also to make payments directly to the subcontractors.

All the subcontractors were paid in full at the latest by February 5, 1926, with the exception of the Murphy Door Bed Company

and Charles H. Darmstadt. The Darmstadt item covered a small balance of $526 which was due to him for heating. Under date of February eighth the architect certified that Darmstadt was entitled to a final payment of $526. In connection therewith, it will be noted that in the certificate of completion furnished by the owner on January 29, 1926, the Darmstadt claim in the sum of $526 was set forth as being one of the outstanding obligations. This item was undoubtedly for extra work, or possibly what was referred to on the trial as tenant changes, since it appears that prior to January 29, 1926, the Darmstadt contract price of $51,000 was paid in full, together with the sum of $1,200 which covered in part the additional or extra work. This claim was not paid by the American Bond and Mortgage Company, Inc., until November 6, 1926. In connection with the bill of the Murphy Door Bed Company, it should be noted that under date of April 5, 1926, the owner certified to the American Bond and Mortgage Company, Inc., that the Murphy Door Bed Company was entitled to a final payment of $888.25. This bill was not paid until July 10, 1926. However, the funds with which to pay both these claims in full were retained under the agreement of January twenty-ninth by the American Bond and Mortgage Company, Inc., which was acting to protect its own interest as well as that of the trustees and bondholders by virtue of the authority which is to be found in the various agreements between the different parties.

The delay in making these payments to the subcontractors was not due to any fault on the part of the owner or the appellant, Harder. If both these small claims had been satisfied by the representative of the plaintiffs, the building would have been fully paid for within the terms of the guaranty agreement, prior to the time the taxes became a lien for the first half of the year 1926.

The testimony of the architect who was in charge of construction indicated that the building was substantially completed about the month of November, 1925, and was fully completed when the certificate of occupancy was issued in the month of January following. The only work left to be done by the owner thereafter, according to him, was the so-called tenant changes. That there cannot be much question about the final completion of the building in the month of January, 1926, is evidenced by the fact that the tenants actually moved in and occupied apartments in the early part of February.

We thus have a situation where the record shows that the building was fully completed and paid for in so far as the owner was

concerned, in the early part of the year 1926. In order to terminate the guaranty and have " all liability thereunder cease," it was necessary for the owner or the guarantors to satisfy the taxes which became a lien during the period of construction in the second half of the year 1925. It is not disputed that the taxes for the first half of that year were paid, and furthermore, it is conceded that the owner, in May, 1927, actually did pay the taxes which became a lien for the second half of the year, 1925. As a result thereof, the purpose of the guaranty was fully satisfied by the payment of all obligations which became due during the period of construction.

In construing the various agreements we are mindful of the fact that they were all prepared by the attorneys for the American Bond and Mortgage Company. Inc., of which Charles C. Moore, the individual trustee, was an executive vice-president. That the result which we have reached is correct is evidenced by the thought which Mr. Moore had in mind, according to the witness, Bonner, when he said: " Well, the work is done and the building is being occupied; it is paid for, and that is all there is to it. Tell Mr. Harder that the building is finished and it automatically cancels the guaranty of completion."

The judgment so far as appealed from should be reversed, with costs and the complaint as against the appellant, George A. Harder, dismissed, with costs.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Judgment so far as appealed from unanimously reversed, with costs to the appellant, and the complaint dismissed as against said appellant, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.